IN the MATTER OF DISCIPLINARY PROCEED-
INGS AGAINST Russel J. LESPERANCE, Attorney
at Law.

Supreme Court

*No. 91–2106–D. Filed January 23, 1992.*

(Also reported in 478 N.W.2d 587.)

PER CURIAM. *Attorney disciplinary proceeding; attorney's license revoked.*

We review the report of the referee recommending that the license of Russel J. Lesperance to practice law in Wisconsin be revoked as discipline for numerous acts of professional misconduct. That misconduct includes failure to provide competent representation to clients, conversion of client funds to his own use, contacting directly persons he knew to be represented by counsel, entering into agreements with clients to prospectively limit his liability for malpractice, accepting and continu-

ing employment in the presence of a conflict of interest and withdrawing from representation without protecting his clients' interests.

Because of the egregious nature and numerous instances of his professional misconduct, we revoke Attorney Lesperance's license to practice law. By that misconduct, he has demonstrated that he is not fit to represent the interests of others in legal matters.

Attorney Lesperance was licensed to practice law in Wisconsin in 1951 and practiced in Milwaukee. He currently is suspended from practice for failure to pay assessments to the court's Board of Bar Examiners and Board of Attorneys Professional Responsibility. He has not previously been the subject of a disciplinary proceeding. The referee in this proceeding is Attorney Charles Herro.

Although personally served with the complaint of the Board of Attorneys Professional Responsibility (Board) in this proceeding, Attorney Lesperance did not file an answer or otherwise appear, notwithstanding numerous letters sent to him by Board counsel and by the referee. Accordingly, the referee granted the Board's motion for default judgment and made conclusions of law based on the allegations of the Board's complaint.

In 1988, a woman pursuing an increase in child support and maintenance retained Attorney Lesperance to represent her in the matter and enforce a $125,000 judgment against her former husband, which was secured by a lien against his real estate. When he undertook that representation, Attorney Lesperance was representing another person having a lien against the same property. Although the client's former husband had told Attorney Lesperance that he had retained counsel and asked him to communicate directly with that attorney, Attorney

Lesperance on several occasions wrote directly to the former spouse, sending copies to his attorney.

Several fee agreements were executed by the client and Attorney Lesperance and one of them required the client to obtain a $7,500 mortgage loan to finance the contemplated litigation. That agreement also engaged her to sell homes on behalf of a management company owned by Attorney Lesperance's brother, providing that a portion of her compensation would be applied to her legal fees. Attorney Lesperance threatened to withdraw from the client's case if she had refused to sign the fee agreement.

After the client's former husband sold his interest in the real estate, Attorney Lesperance asked his client to post a $10,000 bond to enable him to have the former spouse temporarily enjoined from disbursing any of the sale proceeds. The client refused, telling Attorney Lesperance that there was a lien on the property and an injunction was unnecessary. Nevertheless, Attorney Lesperance filed a motion for temporary injunction and asked his client to sign an agreement to provide the $10,000 cash bond, which the client refused. Then, without his client's knowledge or consent, Attorney Lesperance had another person post the cash bond. Although a hearing on the temporary injunction motion was never held and the bond was returned to the person who had provided it, Attorney Lesperance told his client to pay that person $5,000, which she did. The client stated that Attorney Lesperance told her that if she did not do so, the person who had posted the bond would cause her bodily harm.

In the course of this client's legal action, Attorney Lesperance filed numerous motions, some of which the court found without basis, ordering the client to pay $10,000 in attorney fees. When the client terminated his

representation in February, 1989, Attorney Lesperance wrote to the client asking to continue to represent her and stating his intention to continue as attorney of record. He then wrote to the court stating that his client wanted him to prepare a motion for reconsideration of an order and filed an unsigned motion for the client, purportedly pro se.

The referee concluded that Attorney Lesperance's conduct in this matter violated the following rules of professional conduct: SCR 20:3.1[1]—advancing frivolous claims; SCR 20:1.1[2]—failing to provide competent representation; SCR 20:1.15(a)[3]—failing to deposit client

---

[1]SCR 20:3.1 provides:

**Meritorious claims and contentions**

(a) In representing a client, a lawyer shall not:

(1) knowingly advance a claim or defense that is unwarranted under existing law, except that the lawyer may advance such claim or defense if it can be supported by good faith argument for an extension, modification or reversal of existing law;

(2) knowingly advance a factual position unless there is a basis for doing so that is not frivolous; or

(3) file a suit, assert a position, conduct a defense, delay a trial or take other action on behalf of the client when the lawyer knows or when it is obvious that such an action would serve merely to harass or maliciously injure another.

[2]SCR 20:1.1 provides:

**Competence**

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

[3]SCR 20:1.15 provides:

**Safekeeping property.**

(a) A lawyer shall hold in trust, separate from the lawyer's own property, property of clients or third persons that is in the lawyer's possession in connection with a representation. All funds of clients paid to a lawyer or law firm shall be deposited in one or more

funds in a trust account; SCR 20:8.4(c)[4]—converting client funds to his own use; SCR 20:8.4(c)—improperly billing a client for costs; SCR 20:1.8(h)[5]—entering into an agreement with a client prospectively limiting his liability for malpractice; SCR 20:1.16(a)(3)[6]—failing to

identifiable trust accounts as provided in paragraph (c) maintained in a bank, trust company, credit union or savings and loan association authorized to do business and located in Wisconsin, which account shall be clearly designated as "Client's Account" or "Trust Account" or words of similar import, and no funds belonging to the lawyer or law firm except funds reasonably sufficient to pay account service charges may be deposited in such an account. Unless the client otherwise directs in writing, securities in bearer form shall be kept by the attorney in a safe deposit box in a bank, trust company, credit union or savings and loan association authorized to do business and located in Wisconsin, which safe deposit box shall be clearly designated as "Client's Account" or "Trust Account" or words of similar import. Other property of a client or third person shall be identified as such and appropriately safeguarded. If a lawyer also licensed in another state is entrusted with funds or property in connection with an out-of-state representation this provision shall not supersede the trust account rules of such other state.

[4]SCR 20:8.4 provides:

**Misconduct**

It is professional misconduct for a lawyer to:

. . .

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

[5]SCR 20:1.8 provides:

**Conflict of interest: prohibited transactions**

. . .

(h) A lawyer shall not make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless permitted by law and the client is independently represented in making the agreement, or settle a claim for such liability with an unrepresented client or former client without first advising that person in writing that independent representation is appropriate in connection therewith.

[6]SCR 20:1.16 provides:

withdraw from representation after being discharged by his client; SCR 20:1.2(1)[7]—failing to abide by his client's decisions concerning objectives of his representation; SCR 20:7.3(a)[8]—initiating telephone contact with a person known to be in need of legal services in a particular matter; SCR 20:1.7(a)[9]—undertaking the representation

**Declining or terminating representation**

(a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:

. . .

(3) the lawyer is discharged.

[7]SCR 20:1.2 provides:

**Scope of representation**

(a) A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (c), (d) and (e), and shall consult with the client as to the means by which they are to be pursued. A lawyer shall inform a client of all offers of settlement and abide by a client's decision whether to accept an offer of settlement of a matter. In a criminal case or any proceeding that could result in deprivation of liberty, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

[8]SCR 20:7.3 provides:

**Direct contact with prospective clients**

(a) Subject to the requirements of Rule 7.1 and paragraphs (b) and (d), a lawyer may initiate written communication, not involving personal or telephone contact, with persons known to need legal services of the kind provided by the lawyer in a particular matter, for the purpose of obtaining professional employment.

[9]SCR 20:1.7 provides:

**Conflict of interest; general rule**

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents in writing after consultation.

of a client which would be directly adverse to his representation of another client; SCR 20:4.2[10]—communicating on the subject of his representation with a party he knew was represented by counsel in the matter, without that counsel's authorization.

In a second matter, a man retained Attorney Lesperance in April, 1986 to obtain title to a parcel of real estate, including a house intended to be the client's homestead. When he advised the client that it was necessary to form a corporation to purchase that property as a means of protecting the client from creditors, Attorney Lesperance ignored the client's request for an explanation.

The following year, Attorney Lesperance formed a corporation, with the client as president and himself as sole director, secretary and corporate agent. He prepared a certificate placing the corporate stock in trust for the client's family, with himself as trustee but the client did not know the stock was to be put in trust and never signed a certificate doing so. Attorney Lesperance never prepared any trust documents, tax documents or tax returns or opened a checking account in the name of the trust. The corporation then purchased the real estate.

When Attorney Lesperance commenced an eviction action against holdover tenants on the property, he told his client that in order to succeed in that action, it would be necessary to lease the property to another corporation with an option to purchase. The client gave an option to purchase to the other corporation, which was in fact

---

[10]SCR 20:4.2 provides:

**Communication with person represented by counsel**

In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the lawyer or is authorized by law to do so.

owned by Attorney Lesperance's son. Attorney Lesperance represented that corporation and was one of its principal officers. Attorney Lesperance told the client that the purchase option would be destroyed after the eviction proceeding terminated but that was not done.

Attorney Lesperance then held a meeting of the client corporation's shareholders and directors but did not give the client notice of that meeting. Only Attorney Lesperance and another man were present at that meeting, where it was agreed that the optionee corporation could exercise its option to purchase the property. Also at that meeting, Attorney Lesperance was elected director and secretary and the other man was elected president of the client's corporation.

Subsequently, the optionee exercised its option to purchase the property and did so by assuming Attorney Lesperance's claimed attorney fees, in the amount of $13,000. The corporation gave the optionee a deed signed by the new president and by Attorney Lesperance. That deed recited three mortgages, the most recent of which was to a company owned by Attorney Lesperance's son in return for $40,000, although those funds had never been received from that company. Attorney Lesperance recorded the deed, together with the mortgage to his son's company.

Ultimately, the mortgage lender commenced a foreclosure action, whereupon Attorney Lesperance advised his client that the property should be deeded to himself in trust to avoid foreclosure. He then drafted a closing statement and deed, both of which stated that he was acting as trustee for the lender, even though the lender had never authorized him to do so. The foreclosure action was settled when the client personally made the delinquent mortgage payments.

730

During his representation of this client, Attorney Lesperance prepared a will for the client making himself administrator and authorizing payment of his legal fees before any other assets could be distributed from the client's estate. The client had never authorized Attorney Lesperance to draft that will and never executed it.

In late March, 1988, Attorney Lesperance told his client he had been retained by the man he had named president of the corporation and, consequently, no longer wished to represent the client. Thereafter, he wrote to the client's wife and children, asking them to sign a general release and reassignment of their stock to the corporation. The wife and children had no knowledge of the existence of the trust or the corporation but signed the release and reassignment. The trust was terminated and the corporate shares were transferred to Attorney Lesperance, who then arranged for the corporate president to become trustee of the stock for the client's family.

When the client obtained other counsel, who told Attorney Lesperance of the retainer, Attorney Lesperance continued to contact his former client directly. The former client then brought an action against Attorney Lesperance and his relatives' two companies. In that action, Attorney Lesperance appeared on behalf of himself and the companies and claimed to have been the sole shareholder of the client's corporation. The parties settled that action and the client obtained the return of his property.

The referee concluded that in this matter Attorney Lesperance violated the following rules of professional misconduct: SCR 20:8.4(c)—engaging in conduct constituting dishonesty, fraud, deceit or misrepresentation; SCR 20:1.7(a)—representing multiple clients which adversely affected one of them; SCR

20:1.7(b)[11]—accepting and continuing employment where his professional judgment would be affected by his own financial, business, property or personal interests; SCR 20:1.9[12]—representing a client in a matter when he had formerly represented another client in the same or substantially related matter; SCR 20:1.5(a)[13]—charging

[11]SCR 20:1.7 provides:

**Conflict of interest: general rule**

. . .

(b)   A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1)   the lawyer reasonably believes the representation will not be adversely affected; and

(2)   the client consents in writing after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

[12]SCR 20:1.9 provides:

**Conflict of interest: former client**

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a)   represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or

(b)   use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known.

[13]SCR 20:1.5 provides:

**Fees**

(a)   A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

(1)   the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2)   the likelihood, if apparent to the client, that the acceptance

732

an excessive or fraudulent fee; SCR 20:1.8(h)—entering into an agreement with a client prospectively limiting his liability for malpractice; SCR 20:4.3[14]—dealing improperly with an unrepresented person; SCR 20:1.16(b) and (d)[15]—withdrawing from a client's repre-

of the particular employment will preclude other employment by the lawyer;

(3)  the fee customarily charged in the locality for similar legal services;

(4)  the amount involved and the results obtained;

(5)  the time limitations imposed by the client or by the circumstances;

(6)  the nature and length of the professional relationship with the client;

(7)  the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8)  whether the fee is fixed or contingent.

[14]SCR 20:4.3 provides:

**Dealing with unrepresented person**

In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding.

[15]SCR 20:1.16 provides:

**Declining or terminating representation**

(b)  Except as stated in paragraph (c), a lawyer may withdraw from representing a client if withdrawal can be accomplished without material adverse effect on the interests of the client, or if:

(1)  the client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent;

(2)  the client has used the lawyer's services to perpetrate a crime or fraud;

(3)  a client insists upon pursuing an objective that the lawyer considers repugnant or imprudent;

(4)  the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable

sentation without assuring that the client's interests would be protected.

In a third matter, a woman wishing to rent her house, giving the renter an option to purchase the property, retained Attorney Lesperance in 1988 to represent her. A woman interested in renting the house contacted the client, who referred her to Attorney Lesperance. Thereafter, a management company—a sole proprietorship of Attorney Lesperance's brother—entered into a lease agreement with the woman, which Attorney Lesperance signed as agent for the management company. The purported lessor was the management company, as trustee for a "research" company, owned by Attorney Lesperance's wife and son. Attorney Lesperance did not disclose either to his client or to the renter that those companies were owned by members of his family.

Subsequently, the renter signed an offer to purchase the home she was renting. The offer, which was not accepted, provided a purchase price of $15,990, including assumption of a mortgage on the property. Thereafter, the client signed a land contract for the sale of her home to the "research" company, with a purchase price of $14,879, including the mortgage assumption. Attorney

warning that the lawyer will withdraw unless the obligation is fulfilled;

(5)   the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; or

(6)   other good cause for withdrawal exists.

. . .

(d)   Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

734

Lesperance drafted the land contract and signed it as agent of the research company but the document was not recorded.

On the same day, the research company and the management company entered into an option agreement with the renter granting her an option to buy the property from the research company for $15,990, together with the assumption of the mortgage. Attorney Lesperance drafted that document and signed it as agent of the management company but that document was not recorded.

Throughout these dealings, Attorney Lesperance told the client that she was leasing and, later, selling her home to the woman who had rented it. He did not inform her of the transactions with the management and "research" companies. Likewise, he told the buyer that he was handling the transaction on behalf of his client. The client ultimately sought advice from another attorney, who structured a transaction conveying the property directly from the client to the woman who had rented it.

The referee concluded that in this matter Attorney Lesperance violated the following rules of professional misconduct: SCR 20:8.4(c)—engaging in conduct involving dishonesty, fraud, deceit or misrepresentation; SCR 20:1.8(a)[16]—entering into a business transaction with a client without fully disclosing the terms of the transac-

---

[16]SCR 20:1.8 provides:

**Conflict of interest: prohibited transactions**

(a)  A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

(1)  the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client;

735

tion in writing to the client, without giving the client a reasonable opportunity to seek advice of independent counsel in the transaction and without obtaining the client's written consent; SCR 20:1.5(b)[17]—failing to communicate the basis on which his attorney fees would be computed; SCR 20:1.7(b)—representing a client in circumstances in which that representation might be materially limited by his responsibilities to another client, without consulting the client or obtaining the client's written consent.

We adopt the referee's findings of fact and conclusions of law. We also accept the recommendation for discipline. By his conduct in these matters, Attorney Lesperance has demonstrated a pattern of placing his own personal and financial interests and those of persons related to him above those whose interests he had undertaken to represent in his professional capacity. He repeatedly violated the fundamental duty of honesty he owed to his clients. His misconduct merits the most severe discipline—license revocation.

IT IS ORDERED that the license of Russel J. Lesperance to practice law in Wisconsin is revoked, effective the date of this order.

IT IS FURTHER ORDERED that within 60 days of the date of this order Russel J. Lesperance pay to the

(2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and

(3) the client consents in writing thereto.

[17]SCR 20:1.5 provides:

**Fees**

. . .

(b) When the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation.

Board of Attorneys Professional Responsibility the costs of this disciplinary proceeding.

IT IS FURTHER ORDERED that Russel J. Lesperance comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been revoked.